## THOMAS ALBERTSON *v.* THE STATE.

DISORDERLY HOUSE. — The owner of a house is not guilty of an offence under the laws of this State for leasing his house to a tenant, knowing that it is to be kept for the purpose of public prostitution. *Aliter* at common law.

APPEAL from the County Court of Smith. Tried below before the Hon. G. W. SMITH, County Judge.

*W. S. Herndon,* for the appellant.

*George McCormick,* Assistant Attorney-General, for the State.

ECTOR, P. J. The appellant, Thomas Albertson, was convicted in the County Court of Smith County of keeping a disorderly house, for the purpose of public prostitution, and the case is now before us on appeal. Passing over all the other points presented in the record, we will proceed to consider what, on both sides, is conceded to be the main question in the case, and it is this : "Is the owner of a house, who rents it to another with a knowledge that it is to be kept, and which is accordingly kept, for the purpose of public prostitution, guilty as the keeper of such house?"

If the common law was in force, we would have but little difficulty in answering the question. At common law, all disorderly inns, bawdy-houses, gaming-houses, and the like, are public nuisances, and indictable as such. 4 Cooley's Bla. 168.

Mr. Wharton says : "At common law, it is an indictable offence to keep a house of ill-fame for lucre, or to let a a house, knowing it is to be used for the purposes of prostitution, though in New York the last point was once ruled differently, and it was laid down that to rent a house to a woman of ill-fame, with the intent that it should be kept for the purposes of public prostitution, is not an offence

punishable by indictment, though it be so kept afterwards. Perhaps, however, the doctrine held in the latter case was somewhat qualified, as it was declared that when it appeared that the owner of land had either created a nuisance, or continued, or in any wise sanctioned its creation or continuance, he was indictable." Whart. Cr. Law, 2392.

Mr. Bishop, in his commentaries on the criminal law, says: "Probably the true view is, that whenever a man lets a house, knowing the lessee to intend it as a bawdy-house, he is indictable immediately for the criminal attempt, whether the lessee uses the house so or not. If he does so use it, then the lessor may still be holden criminally in the same way, or jointly with the lessee as a keeper of the house, at the election of the prosecuting power." Bishop's Cr. Law, sec. 1041.

In the case of *The People* v. *John Erwin and Mary Ann Clark*, 4 Denio, 129, the Supreme Court of New York held "that all those who aid or abet the commission of a misdemeanor are principal offenders. Therefore, one who demises a house with the intent that it shall be kept, and which is accordingly kept, for the purposes of public prostitution, and who derives a profit from that mode of using the property, is punishable by indictment for a misdemeanor." In that case Erwin insisted that unless he acted in directing, governing, controlling, or managing the house, he could not be convicted for keeping it.

We make the following extracts from the case: "In misdemeanors there are no accessaries, as there are in felonies; but all the guilty actors, whether present or absent at the time the offence was committed, are principals, and should be indicted as such." And the Supreme Court of Massachusetts, in the case of *The Commonwealth* v. *Harrington*, 3 Mass. 26, hold the same doctrine. In this case the court say: "There is no statute against such an offence, and the question, then, is, whether it is indictable at common law.

* * * The real question is, whether exciting, encouraging, and aiding one to commit a misdemeanor is not of itself a misdemeanor. And we find it has been held so to be in the case of *The King* v. *Phillips*, 6 East, 464, in which it was decided that an endeavor to provoke another to commit the misdemeanor was indictable, it being the object of the law to prevent the commission of offences. On this ground we think the indictment is sustainable. In *Rex* v. *Scofield* it was held that the intent may make an act, innocent in itself, criminal. To apply this principle to the present case, the letting of a house is in itself an innocent act, but the defendant let his house for the purposes of prostitution, and he knew that it was used accordingly. Now, keeping a bawdy-house was an offence at common law, and letting a house for such a purpose must be a misdemeanor."

At common law, it seems clear that such letting or hiring, with a guilty knowledge, would make the landlord indictable as a principal in keeping the house.

Has the common law been changed in regard to this offence? In the very beginning of the Criminal Code, Part I., under the caption, "Several provisions relating to the whole Code," "Title I," "The general objects of the Code, the principles on which it is founded, and rules for the interpretation of penal laws," we find the following provisions:

"Article 1. The design of enacting this Code is to define in plain language every offence against the laws of this State, and affix to each offence its proper punishment." Pasc. Dig., art. 1603.

"Art. 3. In order that the system of penal laws in force in this State may be complete within itself, and that no system of foreign laws, written or unwritten, may be appealed to, it is declared that no person shall be punished for any act or omission, as a penal offence, unless the same is expressly defined, and the penalty affixed by the written law of this State." Pasc. Dig., art. 1605.

" Art. 4. The principles of the common law shall be the rule of construction, when not in conflict with the Penal Code or Code of Criminal Procedure, or with some other written statute of the State.'' Pasc. Dig., art. 1605.

" Art. 9. This Code, and every other law upon the subject of crime which may be enacted, shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects; and no person shall be punished for an offence which is not made penal by the plain import of the words of the law.''

The offence for which the appellant is prosecuted is defined in the Penal Code thus :

" Art. 396. A disorderly house is one kept for the purpose of public prostitution, or as a common resort for prostitutes,'' etc.  The information is framed under the first clause of the article.  Pasc. Dig., art. 2027.

" Art. 398. Any person who shall keep a disorderly house, as defined above, shall be punished by fine not less than one hundred nor more than five hundred dollars.''

The term " accomplice,'' as defined by article 219 of the Penal Code (Pasc. Dig., art. 1814), is the same as an accessary before the fact at common law; and the Code further provides, by article 1820, Paschal's Digest, that there may be accomplices to all offences except *manslaughter* and *negligent homicide*.

Whether the evidence set forth in the statement of facts constitutes an indictable offence against the appellant is a question of great consequence to the public.  After giving the subject a most mature consideration, it is the opinion of a majority of the court that it does not.  The plain import of the language used in the statute forces us to this conclusion.  If it had been the intention of the framers of the Penal Code to have made it an indictable offence to rent to another a house for the purpose of public prostitution, how

easy it would have been for them to have done so, as they did in the chapter of the Code in regard to gaming, where it is provided, in article 420, that "if any person shall rent to another a room or house for the purpose of being used as a place for playing, or dealing, or exhibiting any of the games prohibited by the provisions of this chapter, he shall be fined," etc. Pasc. Dig., art. 2056.

The judgment of the lower court is reversed and the cause dismissed.

*Reversed and dismissed.*